WESTERN COMMERCIAL TRAVELERS' ASS'N v. SMITH.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 931.

**1. ACCIDENT INSURANCE—NOTICE OF INJURY OR DEATH.**

An accident policy provided that, in case of "any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given in writing," with full particulars of the accident, and that a failure to give such notice should invalidate the claim. *Held*, that two classes of notices were intended,—one an immediate notice of the accident or injury when not resulting in death, and the other an immediate notice of death resulting from accident or injury, the latter to be given by the beneficiary; and that a notice so given in the latter case was sufficient, though no notice of the injury was given before death.

**2. SAME—"ACCIDENTAL MEANS" DEFINED.**

If a disease resulting in death is the effect of an accident, so as to be a mere link in the chain of causation between the accident and the death, the death is attributable, not to the disease, but to the accident alone.

**3. SAME.**

Where blood poisoning results from an abrasion of the skin of a toe by a new shoe, and death follows, the death is properly attributable to "bodily injuries effected by external, violent, and accidental means," within the meaning of an accident policy.

**4. SAME.**

"Accidental means" are those which produce effects which are not their natural and probable consequences. An effect which is a natural and proba-ble consequence of an act, or course of action, is not an accident; but one which is not the natural and probable consequence of an act, or course of action, is produced by accidental means, and is an accident.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

F. N. Judson (C. S. Taussig and Louis R. Tatum, on the brief), for plaintiff in error.

S. L. Swarts (E. M. Merriman and George H. Sanders, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. The Western Commercial Travelers' Association, the plaintiff in error, has sued out a writ to reverse a judg-ment against it upon a certificate of insurance against accident which it issued to Freeman O. Smith, one of its members, for the benefit of

Sarah I. Smith, the defendant in error. A jury was waived, the court tried the case and made a special finding of the facts, and the error assigned is that the facts found do not support the judgment (1) because they show that immediate notice of the accident or injury was not given to the association, as required by the policy, and (2) because they fail to show that the death of the member was produced "by bodily injuries effected by external, violent, and accidental means."

These are the facts relative to the two questions thus raised which appear from the pleadings and the findings: The certificate upon which the suit is based secured to the member, Freeman O. Smith, indemnity in various amounts for total disability, for the loss of an arm or a leg, or one arm and one leg, and for the loss of both arms or both legs, by accident; and it also secured to his beneficiary, the defendant in error, indemnity for his death produced "by bodily injuries effected by external, violent, and accidental means" alone. It contained this provision:

"In the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given in writing, addressed to the secretary, at St. Louis, Missouri, stating the full name and address of the member, number of certificate, occupation, and name and address of the attending physician, with full particulars of the accident or injury, and failure to give such notice shall invalidate all claim under the certificate; and unless direct and affirmative proof of the death or duration of total disability shall be furnished the association within ninety (90) days from the happening of such accident, as per forms of proof furnished, and questions prepared on same by the board of directors of the association, then all claims under this certificate shall be waived and forfeited to the association."

In the latter part of August, 1895, while this certificate was in force, Freeman O. Smith, who was a strong and healthy man, commenced wearing a pair of new shoes. About September 6, 1895, the friction of one of the shoes against one of his feet, unexpectedly and without design on his part, produced an abrasion of the skin of one of his toes. He gave the abrasion reasonable attention, but it nevertheless caused blood poisoning about September 26, 1895, which resulted in his death on October 3, 1895. Neither the deceased nor the defendant in error gave any notice of this accident or injury to the association before his death, but within a reasonable time thereafter due notice thereof and of her claim under the certificate was given to the association by the defendant in error.

The agreement of the parties was that the failure to give the notice required by this certificate should invalidate all claim under it, and there can be no question but that the service of this notice was a condition precedent to the enforcement of any such claim. Insurance Co. v. Kyle, 11 Mo. 278, 289; McCullough v. Insurance Co., 113 Mo. 606, 21 S. W. 207; McFarland v. Association, 124 Mo. 204, 27 S. W. 436. The real question here is, therefore, what was the notice exacted of the beneficiary by the contract and when was it to be given? The agreement was that, "in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given." In the interpretation of this provision, the fact must be borne in mind that all claims under this contract for accidents and injuries which do not result in death

accrue to the member himself. The beneficiary of the death loss has no interest in them. It is only in a case in which death results from an accident or injury that any claim in favor of the defendant in error arises. In the nature of things, she cannot know whether she will have a claim until the member whose life is insured for her benefit is dead. Must she give notice of the accident or injury on account of which her claim may arise before she knows whether or not it will ever come into existence? A provision which exacts such a notice should be plain, clear, and unambiguous. Forfeitures are not favored in the law, and a strained and unnatural construction must not be given to this contract in order to impose one here. A stipulation could have easily been drawn which would have plainly imposed upon this beneficiary the duty of giving such a notice. If this contract had simply omitted the words, "or in case of death resulting therefrom," and had provided that, "in the event of any accident or injury for which any claim shall be made under this certificate, notice of such accident or injury shall be given immediately after it happens," there would have been no doubt that the beneficiary was required to notify the association of the accident as soon as it occurred. If it had required only that, "in case of death resulting from any accident or injury for which any claim shall be made under this certificate, immediate notice shall be given," it would have been equally certain that she was not required to give any notice until the death had supervened. As it stands, it seems to us to be intended to provide two different classes of notices for the two classes of claims,—one an immediate notice of the accident or injury which does not result in death, the other an immediate notice of the death which results from such an accident or injury, to be given by the beneficiary as soon as it occurs. If this is not the correct construction of the provision, the words, "or in case of death resulting therefrom," are without significance or effect, because the stipulation, without those words, would require the beneficiary of a death loss to give notice of the accident or injury immediately after it occurred.

There is no better canon for the interpretation of contracts than the rule that the court may put itself in the place of the parties to the agreement at the time it was made, and may then consider how its terms affected its subject-matter, and ascertain what those who made it intended thereby. Accumulator Co. v. Dubuque St. Ry. Co., 27 U. S. App. 364, 372, 12 C. C. A. 37, 41, 42, and 64 Fed. 70, 74; Westervelt v. Mohrenstecher, 40 U. S. App. 221, 227, 228, 22 C. C. A. 93, 95, and 76 Fed. 118, 121; Rockefeller v. Merritt, 40 U. S. App. 666, 675, 22 C. C. A. 608, 613, 614, and 76 Fed. 909, 915; Prentice v. Forwarding Co., 19 U. S. App. 100, 110, 7 C. C. A. 293, 298, and 58 Fed. 437, 443. When this is done, it can hardly be successfully maintained that the parties to this certificate intended to require the beneficiary of a loss by death under it to give notice of the accident or injury before the death occurred and before her claim arose. When the provision, "in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given," is read in the light of the events to which it refers, and of the relation of the parties to the contract to each other, its

natural and obvious meaning is that, in the event of any accident or injury which shall not result in death, immediate notice of such accident or injury shall be given, or, in the case of death resulting from any such accident or injury, immediate notice of such death shall be given, because in the one case it is the injury, and in the other it is the death, which conditions the existence of the claim. The conclusion is that this certificate required no notice of the accident or injury to be given to the association by the beneficiary of the death loss before the death occurred, and the due notice which the court finds she gave immediately after the death was a sufficient compliance with this stipulation of the agreement.

It is earnestly contended, however, that the death was not caused by bodily injuries effected by external, violent, and accidental means (1) because the disease of blood poisoning was the cause, and the abrasion of the skin of the toe was only the occasion, the locality in which the disease first appeared, and (2) because the abrasion of the skin was not an accident, but was made in the ordinary course of things. The contract does not differ, in respect to the subject presented by this proposition, from those which have been repeatedly considered by this court, and we state its legal effect briefly, because the reasons and authorities in support of our views here have been frequently set forth in the opinions of this court which are cited below.

If the death was caused by a disease, without any bodily injury inflicted by external, violent, and accidental means, as in the case of the malignant pustule (Bacon v. Association, 123 N. Y. 304, 25 N. E. 399), and as in the case of sunstroke (Sinclair v. Assurance Co., 3 El. & El. 478; Dozier v. Casualty Co., 46 Fed. 446), the association was free from liability by the express terms of the certificate. If the deceased suffered an accident, but at the time he sustained it he was already suffering from a disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected by the disease or infirmity, but he died because the accident aggravated the disease, or the disease aggravated the effects of the accident, as in the case of the insured who was subject to such a bodily infirmity that a short run, followed by stooping, which would not have injured a healthy man, produced apoplexy (Insurance Co. v. Selden, 24 C. C. A. 92, 78 Fed. 285), the association was exempt from liability, because the death was caused partly by disease and partly by accident. If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone. Insurance Co. v. Melick, 27 U. S. App. 547, 560, 561, 12 C. C. A. 544, 552, and 65 Fed.

178, 186; Railway Co. v. Callaghan, 12 U. S. App. 541, 550, 6 C. C. A. 205, 210, and 56 Fed. 988, 994; Railway Co. v. Kellogg, 94 U. S. 469, 475; Association v. Shryock, 36 U. S. App. 658, 663, 20 C. C. A. 3, 5, and 73 Fed. 774, 776.

Now, the finding of the facts made by the trial court is conclusive in this case, and the only question here presented is whether those facts warrant the judgment below.   That court has found that the deceased was an exceptionally strong and healthy man when the abrasion in question was produced.   It has found that the wearing of the new shoe produced the abrasion on September 6, 1895, that this abrasion was the cause of blood poisoning on September 26, 1895, and that the blood poisoning produced the death on October 3, 1895. The question whether the death was produced by the abrasion or by the disease is, therefore, extracted from this case.   There is no ground for the contention that the disease of blood poisoning was an intervening and independent cause of the death, because the finding of the court below is that that disease was a mere link in the chain of causation between the abrasion which produced it and the death which it produced.

The only question remaining, therefore, is whether or not the abrasion of the skin of the toe was produced by accidental means.   If it was, the death was so produced; and if it was not, there was no accident, and consequently no cause of action.   The contract was that the association would pay the promised indemnity for any death caused "by bodily injuries effected by external, violent, and accidental means."   There is no claim that the friction of the shoe which caused the abrasion was not external and violent.   The contention is that it was not accidental.   The significance of this word "accidental" is best perceived by a consideration of the relation of causes to their effects.   The word is descriptive of means which produce effects which are not their natural and probable consequences.   The natural consequence of means used is the consequence which ordinarily follows from their use,—the result which may be reasonably anticipated from their use, and which ought to be expected.   The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow.   An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.   On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means.   It is produced by means which were neither designed nor calculated to cause it.   Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means.

Railway Co. v. Elliott, 12 U. S. App. 381, 386, 387, 389, 5 C. C. A. 347, 350, 351, 353, 55 Fed. 949, 952, 953, 955.

Was the abrasion of the skin of the toe of the deceased the natural and probable consequence of wearing new shoes? It must be conceded that new shoes are not ordinarily worn with the design of causing abrasions of the skin of the feet, and the trial court has found that the abrasion upon the toe of the deceased was produced unexpectedly, and without any design on his part to cause it. An abrasion of the skin, certainly, is not the probable consequence of the use of new shoes; for it cannot be said to follow such use more frequently than it fails to follow it. Nor can such an abrasion be said to be the natural consequence of wearing such shoes,—the consequence which ordinarily follows, or which might be reasonably anticipated. How, then, can it fail to be the chance result of accidental means,— means not designed or calculated to produce it? If the deceased, without design, had slipped, and caused an abrasion of his skin, as he was walking down the street, or had punctured the skin of his foot by stepping on a nail in his room, or had pierced it with a nail in his shoe as he was drawing it upon his foot, there could have been no doubt that these injuries were produced by accidental means; and it is difficult to understand why an abrasion of the skin, produced unexpectedly and without design, by friction caused by wearing a new shoe, does not fall within the same category.

In McCarthy v. Insurance Co., 8 Biss. 362, Fed. Cas. No. 8,682, it is held that death from the rupture of a blood vessel caused by swinging Indian clubs for exercise may be a death from bodily injury caused by accidental means. In Martin v. Insurance Co., 1 Fost. & F. 505, a total disability caused by straining the back while lifting a heavy burden was declared to be a disability produced by accident. In Insurance Co. v. Burroughs, 69 Pa. St. 43, 51, the court said that an accident is "an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance; casualty; contingency,"—and held that a strain of the abdominal muscles, produced by pitching hay, which caused an inflammation that resulted in death, was an accident. Death by drowning, by involuntarily inhaling illuminating gas, or by fright is death by accidental means. Trew v. Assurance Co., 6 Hurl. & N. 839; Mallory v. Insurance Co., 47 N. Y. 52; Paul v. Insurance Co., 112 N. Y. 472, 20 N. E. 347; McGlinchey v. Casualty Co., 80 Me. 251, 14 Atl. 13. In Insurance Co. v. Melick, 27 U. S. App. 547, 12 C. C. A. 544, and 65 Fed. 178, this court affirmed a judgment based upon a verdict that a death caused by lockjaw, which was produced by a shot wound unexpectedly inflicted upon himself by the deceased, without design, was a death caused by bodily injury produced by accidental means alone. In Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, three persons jumped from the same platform at the same time and place. Two of them alighted in safety, while the third suffered a stricture of the duodenum which produced a disease which caused his death. The supreme court affirmed a judgment founded upon a verdict that his death was the result of bodily injuries effected through external,

violent, and accidental means, and approved an instruction to the jury that:

"The term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected'; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

We are unable to distinguish the case at bar from those to which we have referred, and the case last cited is of controlling authority in this court. The abrasion of the skin of the toe of the deceased was unexpectedly caused, without design on his part, by unforeseen, unusual, and unexpected friction in the act of wearing the shoe which preceded the injury. It was not the natural or probable consequence of that act, and it was, therefore, produced by accidental means. The judgment below must be affirmed, with costs; and it is so ordered.