J. SIDNEY SMITH & SON, Appellants, v. THE PHOENIX INSURANCE COMPANY, Respondent, and J. SIDNEY SMITH & SON, Appellants, v. THE CONTINENTAL INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals, July 6, 1914.

1. INSURANCE: Contracts: Meaning of Policy. In the interpretation of a contract regard must be had to the object and intention the parties had in making it as expressed in, and consistent with, the writing employed to portray it. Therefore,

where a policy was issued to the insured owning grain in a certain elevator insuring plaintiff's grain and seeds "while contained" in a certain named elevator "and in cars on side tracks within one hundred feet of the above described elevator" the policy meant that the cars should be within one hundred feet of the elevator and not merely that they should be on side tracks which ran within one hundred feet thereof no matter how far the cars were therefrom. The locus of the fire insured against was at or within 100 feet of the elevator and did not extend to a greater distance though connected with the locus of the elevator by a side track.

2. ———: ———: ———: **Strict Construction Against Insurer.** Where the language of a policy is not ambiguous nor uncertain there is no room for the application of the rule construing it most strictly against the insurer, especially when to do so would contravene the evident object and purpose of the contract itself.

3. ———: ———: **Subrogation: Release of Party Causing Fire.** After bringing suit on the policies, plaintiff sued the railroad and obtained judgment for the full amount of the loss on the ground of the railroad's negligence. Plaintiffs accepted a payment and released the judgment. The policies provided that the insurance companies were to be subrogated to all right of recovery by plaintiffs against the parties responsible for the loss and that plaintiffs were to assign such right to the insurance companies. The insurance greatly exceeded the loss; *held*, that by releasing the railroad company, performance of the agreement to assign became impossible and the insurance companies were also released.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn* Judge.

AFFIRMED.

*Harkless & Histed* and *Hogsett & Boyle* for appellants.

*Lathrop, Morrow, Fox & Moore* for respondents.

TRIMBLE, J.—Plaintiffs brought a suit against the above named defendants upon a policy of insurance issued by each defendant respectively. The policies were both on the New York standard form and

covered the same property; and the part of the policies in controversy being the same, the two suits were consolidated in the lower court and tried as one, and were brought here on appeal in that form.

The policies were issued and took effect on February 18, 1910, and were on plaintiffs' grain and seeds "while contained in the elevator of steel construction, known as the Independent Elevator, situate on the right of way of the Chicago Great Western Railway of Omaha, Nebraska, and in cars on side tracks within one hundred feet of the above described elevator."

On April 1, 1910, twenty cars of corn were purchased for plaintiffs by one Bushfield acting as their broker. The grain was delivered by the seller to the Union Pacific Railroad Company and it in turn delivered it to the Chicago Great Western Railway Company which set seventeen of the cars on side track No. 7 Saturday afternoon April 2, 1910. Sunday night eleven of the cars caught fire and were burned. These cars were coupled together in one continuous string and were set by the railroad on side track No. 7 which ran to and through the Independent Elevator, but the cars were still in transit and in charge of the railroad company since no reasonable time had been afforded for the unloading of the cars.

The Independent Elevator did not burn nor did the fire originate there but came from a source situated some distance south of the Independent Elevator. Plaintiffs had some corn in the Independent Elevator but nothing therein was burned or damaged by fire, nor were any cars burned that were located within 100 feet of said elevator. All of the cars that burned were located more than 100 feet distant therefrom. The Yards of the Chicago Great Western Railway extend south from the Independent Elevator for probably a half mile to the Union Pacific Railway; and for a distance of 250 feet east and west of the elevator the ground is covered with side tracks running the

length of the yard. The policies aggregated $12000. The value of the corn burned was $7,640.04.

Defendant's contention is that the corn destroyed was not covered by the terms of the policies; that the policies were intended to cover grain and seeds "while contained in the elevator of steel construction known as the Independent Elevator" and in cars located within one hundred feet of "the above described elevator." Plaintiffs contend that the one hundred feet refers to tracks that close to the elevator. The question is did the contract mean the cars were to be within one hundred feet of the elevator or merely that the side track on which the cars were standing must run within 100 feet thereof?

In getting at the interpretation to be placed on a contract, regard must be had to the object and intention the parties had in making it as expressed in the writing employed to portray it and consistent therewith. [Ellis v. Harrison, 104 Mo. 270, l. c. 279.] The primary purpose of these policies was to insure grain while contained in this particular elevator, and secondarily it covered grain in cars within 100 feet thereof. The locus of the fire insured against was at or within 100 feet of the elevator. Plaintiffs construction would take out of the contract the element of any particular place at which defendant would insure against fire. If, on either side of the elevator and within 100 feet of it, a track ran for any distance however great from the elevator, the policy would cover a car sitting thereon no matter where located nor how hazardous the surroundings, according to plaintiffs' construction. Plaintiffs had corn in the elevator, the policies were issued February 18, 1910, while the corn that was burned April 3, 1910, had not been purchased, and it cannot be said that the policies covered that particular corn. The fire did not originate, nor did it injure anything in or near the locus of the elevator. The grain first mentioned in the policies is grain while contained in

a certain named elevator of steel construction. And it is perfectly reasonable that defendants would be willing to insure corn located within a radius of 100 feet of that place, and unreasonable that it would extend that locality without regard to dangerous surroundings and limit such locality only by the fact that a track ran close to the elevator which had nothing whatever to do with assuring defendants as to the hazards of fire or the ability to control it. Taking into consideration the object of the contracts, the purpose each party had in view, the considerations and circumstances affecting them and the wording of the contract itself, we do not think the language is ambiguous or uncertain, and hence there is no room for the application of the rule construing it most strictly against the insurer, especially when to do so would contravene the evident purpose and object of the contract itself. Consequently, the court did right in directing a verdict for defendant.

There is another reason why plaintiffs are not entitled to recover. On November 12, 1910, the day after these suits were filed, plaintiffs brought suit against the railroad company for the damage sustained by the fire on the theory that the corn was still in its possession and in transit. A *judgment for the full value of the corn was obtained.* Steps were taken to appeal the case to the Supreme Court of Kansas in which state the suit had been brought. But on June 27, 1911, plaintiffs acknowledged full and complete satisfaction of this judgment and released the judgment in consideration of the payment of $6000, of which $1000 was used to pay attorneys' fees. By the terms of the policies the companies were to be subrogated, on payment of the loss, to all right of recovery by plaintiffs against the railroad company for the loss, and plaintiffs agreed to assign such right to the companies. on receiving such payment. By analogy, the plaintiffs were the creditors, the railway company the principal

debtor and the insurance companies the sureties. When the liability of the insurance companies has been established and they have paid the amount found due from them, they would be entitled to all the means of indemnity or rights of recovery held by plaintiffs against the railroad. [Hartford Fire Ins. Co. v. Wabash Ry. Co., 74 Mo. App. 106.] And plaintiffs in the policy agreed to assign such right to the defendants. If now plaintiffs obtain judgment for the *full value* of their loss against the principal debtor, the railroad, and release the latter from all further liability, what right of recovery is left for plaintiffs to assign to defendants herein? And when the primary debtor, or wrongdoer, is released, does not this necessarily release the surety where, as in this case, the loss is much less than the insurance. The insurance exceeds the loss so that defendants would be entitled to be subrogated to any claim plaintiffs may have had against the railroad company for a loss caused by its negligence. [Phoenix Ins. Co. v. Erie and Western, etc. Co., 117 U. S. 312, l. c. 320; Liverpool, etc. Co. v. Phoenix Ins. Co., 129 U. S. 397; St Louis, etc. R. Co. v. Com L. Union Ins. Co., 139 U. S. 223.] The judgment against the railroad being for the full value of the property destroyed, a release of that judgment was a release of the cause of action arising out of its destruction. And where the insured property is destroyed by the negligence of a railroad, the insured cannot release the right of action which the insurer would have against the railroad on making payment of the loss without releasing the insurer. [Sims v. Mut. Fire Ins. Co., 77 N. W. 908, l. c. 910.] There can be no such thing as subrogation where plaintiffs have released all claims against the railroad, and where this has been done without the knowledge and consent of the insurer, no recovery can be had against it. [Kennedy v. Iowa St. Ins. Co., 91 N. W. 831, l. c. 832.] Plaintiffs agreed to assign any right of recovery they had to the de-

fendants upon payment of the loss. But by obtaining a judgment in full against the railroad and releasing it, performance of the agreement to assign became impossible. The defendants were, therefore, released. [Packham v. German Fire Ins. Co., 46 Atl. 1066, l. c. 1068; Downs, etc. Assn. v. Pioneer Mut. Ins. Assn., 83 Pac. 423, l. c. 425. See also Niagara Fire Ins. Co. v. Fidelity Title and Trust Co., 16 Atl. 790; Bloomingdale v. Columbia Ins. Co., 84 N. Y. Supp. 572; Carstairs v. Mechanics & Traders Ins. Co., 18 Fed. 473.]

The judgment of the circuit court was right and must be affirmed. It is so ordered. All concur.