EMMA P. F. DUNN, Respondent, v. STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted May 3, 1917. Opinion Filed June 6, 1917.

1. **ACCIDENT INSURANCE: Matters Covered: Death from Disease.** An insurance policy insuring against accidents, disability from certain diseases, and death resulting from bodily injuries through external, accidental and violent means, or resulting, directly and independent of all other causes, from sunstroke, freezing or hydrophobia accidentally suffered, or involuntary or unconscious inhalation of gas or other poisonous vapors, within ninety days after the exposure or infection, does not insure against death from disease.

2. ———: **Action on Policy: Burden of Proof.** In an action on an accident insurance policy, for death, the burden is on plaintiff to prove that the death resulted from one of the causes covered by the policy.

3. **INSURANCE: Construction of Policy: Unambiguous Policy.** Where the language used in an insurance policy, looking at the whole policy and construing it in accordance with its evident purpose, is unambiguous, there is no room for the application of the rule applicable to ambiguous policies, that insured is entitled to the most favorable construction.

4. **ACCIDENT INSURANCE: Action on Policy: Applicability of Instructions to Evidence.** Where, in an action on an accident insur-

ance policy, for death resulting from disease, the policy did not show any intention to cover death from such cause, and no extrinsic evidence was adduced to show any such intention on the part of insurer, an instruction permitting a recovery if the parties to the policy had such intention, was erroneous.

5. **INSTRUCTIONS**: Applicability to Evidence.    An instruction which permits a recovery on a theory not justified by the evidence is erroneous.

6. **ACCIDENT INSURANCE**: Action for Death from Disease: Evidence. In an action on an accident insurance policy, for death resulting from disease, insurer's charter and certificate to do business in this State and evidence that insured would have had to pay for an ordinary life insurance policy a much larger premium than that exacted from him, were admissible as tending to prove that the policy in question was not a life insurance policy and did not cover death resulting from disease.

7. ——: ——: ——: **Trial Practice: Theory at Trial.** In such case, *held* that the introduction of such evidence by defendant did not establish that it tried the case on the theory that the policy was ambiguous concerning the question as to whether or not death from disease was covered.

Appeal from St. Louis Circuit Court.—*Hon. William M. Kinsey,* Judge.

REVERSED.

*Anderson, Gilbert, Hayden & Levi* for appellant; *M. U. Hayden* of counsel.

(1) In an action upon a policy of accident insurance the burden is upon the beneficiary to prove that the death of the insured occurred under the circumstances, and was caused in the manner, provided by the policy. The facts must be established which bring the case within the terms and provisions of the policy sued on. Laessig v. T. P. A., 169 Mo. 272, 69 S. W. 469; Norman v. Commercial Travelers, 163 Mo. App. 175, 145 S. W. 853; Bathe v. Insurance Co., 152 Mo. App. 87, 132 S. W. 743; Wright v. Commercial Travelers, 188 Mo. App. 457, 174 S. W. 833; Goodes v. Commercial Travelers, 174 Mo. App. 330, 156 S. W. 995; Insurance Co. v. McConkey, 127 U. S. 661; Insurance Co. v. Coos County. 151 U.

S. 452; Carnes v. Traveling Men's Association, 106 Iowa, 281. (2) The courts of this State, as well as those of other States, have recognized and applied, in the construction of policies of insurance, certain well established principles of law governing the interpretation of all written contracts, among which are the following: (a) Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. Words used in written contracts should be given their common every-day meaning and definite refinement should be ignored. Hoover v. Insurance Co., 93 Mo. App. 111, 118; State ex rel. Schmoll v. Ellison, 266 Mo. 580, 182 S. W. 740; Good v. Erker, 170 Mo. App. 881, 153 S. W. 556; Lumber Co. v. Dent, 164 Mo. App. 442, 144 S. W. 1198. (b) A contract of insurance differs in no respect from other contracts as to the rules for their interpretation. The object is, as in all contracts to ascertain the meaning and intention of the parties to be gathered from the whole instrument, in contemplation of which they are supposed to contract. Renshaw v. Insurance, 103 Mo. 595; Brewing Company v. Insurance Co., 63 Mo. App. 663; Reim v. Knights of Pythias, 83 Mo. App. 442. (c) Where the language of a contract is clear the contract is obligatory upon the parties, though its consequences may be harsh and its stipulations unusual. Counts v. Medley, 163 Mo. App. 546, 146 S. W. 465. (d) In construing a contract in numerous sections no clause of a section can be considered alone as controlling; the duty of the court being to harmonize all parts if possible in a reasonable and natural construction. Heat & Power Company v. City of Independence, 188 Mo. App. 157, 175 S. W. 86. (e) No word or phrase should control the terms of a written contract in opposition to intent of the parties as disclosed by the entire contract. Miles v. Bank, 187 Mo. App. 230. (f) If the effect of an insurance contract is clear it must be enforced as written without adding an increased liability by construction; but, as its terms are

prescribed by the company, if they are of doubtful meaning they will be construed most strongly against the company.    Banta v. Casualty Co., 134 Mo. App. 222, 226. (g)   When a clause in a policy of insurance stands with others, its sense may be gathered from those which immediately precede and follow it.    Straus v. Insurance Co., 94 Mo. 182-189.    (h)   A contract should be so construed that one party shall not have an unfair or unreasonable advantage over the other.    Lumber Co. v. Dent, 164 Mo. App. 442, 144 S. W. 1198; Counts v. Medley, 163 Mo. App. 546, 146 S. W. 465; McManus v. Clothing Co., 60 Mo. App. 216.    (i)   In arriving at the true construction of a contract, the terms of which are doubtful, the situation of the parties, the circumstances, usages of business and purposes intended are to be considered.    Counts v. Medley, 163 Mo. App. 546, 146 S. W. 465; Bank v. Chick, 170 Mo. App. 343, 156 S. W. 743; Erich v. Surety Company, 191 Mo. App. 111, 166 S. W. 845; Lemaire v. Strassberger, 179 S. W. 959.    (j)   Prime rules for the interpretation of contracts are that when the words used are plain and unambiguous they must be enforced in their natural sense, and that effect must be given, if possible, to every part of an instrument.    Webb v. Insurance Co., 134 Mo. App. 576, 580; Lovelace v. Association, 126 Mo. 104.    (3)   Where the language of a contract is clear, the contract is obligatory on the parties, though the consequences may be harsh, and the stipulations contrary to the mode in which men ordinarily bind themselves by such contracts.    But where the terms are doubtful or have a double meaning, the situation of the parties in relation to the subject-matter of the contract, the surrounding circumstances, the usages of the business and the purposes to be accomplished are all matters of consideration in arriving at the true construction of the instrument.    It has been settled since an early day in this State that common sense and good faith are the leading characteristics of all interpretations.    Counts v. Medley, 163 Mo. App. 546, 146 S. W. 465; Fenton v. Perkins, 3 Mo. 23; Bank v. Haywood, 62 Mo. App. 550. (4) If the insuring clause of a policy does not clearly specify the contin-

gency upon which indemnity shall be payable, the scope of the insurer's liability may be determined from other provisions of the policy. O'Connor v. Insurance Co., 196 Mo. App. 150; Mitchell v. Accident Co., 179 Mo. App. 1. (5) A policy of insurance should not be so construed as to impose upon the insurer the performance of obligations which it has no authority, under its charter or under its license from the State, to contract to perform. 1 Cooley's Briefs on Insurance, p. 622; Lewis Publishing Co. v. Rural Publishing Co., 181 S. W. 93; Insurance Co. v. Refinery Co., 57 Fed. 294, 298; Dairy Co. v. Mooney, 41 Mo. App. 665; Hirsch v. Grand Lodge, 56 Mo. App. 101. (6) A policy of insurance which contains even express provisions for the performance by the insurer of obligations which it is forbidden by law to perform is void and the insurer is not estopped to plead the invalidity of such policy. Lewis Publishing Co. v. Rural Publishing Co.. 181 S. W. 93; R. S. 1909, sections 6926, 6983, 7040 and 7041; 3 Thompson on Corporations (2 Ed.), sec. 3257; Watts v. Life Association, 111 Iowa, 90; 1 Cooley's Briefs on Insurance, p. 622; In re Insurance Co., 107 Iowa, 143; Weed v. Cumming, 198 Pa. 442; Wuerfler v. Order of Druids, 116 Wis. 19. (7) It is only when an insurance company has acted in reference to a certain transaction, with full knowledge of all the facts and has received the full benefits thereof, that it is estopped to plead *ultra vires*. 1 Cooley's Briefs on Insurance, p. 520; 3 Thompson on Corporations (2 Ed.), sec. 3257. (8) All acts, whether those of natural or artificial persons, are presumed to have been lawfully performed. Hartwell v. Parks, 240 Mo. 537, 144 S. W. 793. (9) It is a rule of interpretation that where a contract is fairly open to two constructions, by one of which it would be lawful, and the other unlawful, the former must be adopted. Hobbs v. McLean, 117 U. S. 567, 576. United States v. Railroad Co., 118 U. S. 235.

*Jones, Hocker, Sullivan & Angert, Edward A. Haid* and *James C. Jones, Jr.,* for respondent.

(1) (a) Where a policy of insurance is ambiguous and is subject to two interpretations, that construction, under the rule of *strictissimi juris,* is to be adopted which is most favorable to the insured. Stark v. Insurance Co., 176 Mo. App. 574, 581; Mathews v. Modern Woodmen, 236 Mo. 326, 342; Still v. Insurance Co., 172 S. W. 625, 626; Wiest v. Insurance Co., 186 Mo. App. 22; La Force v. Insurance Co., 43 Mo. App. 518, 530. (b) The policy should be construed so as to effectuate the insurance and not to defeat it. Wiest v. Insurance Co., 186 Mo. App. 22. (c) If a subsequent clause in effect nullifies previous provisions, it should be ignored. American Credit Indemnity Co. v. Wood, 73 Fed. 81, 88; Pacific Mutual Life Ins. Co. v. McCabe, 162 S. W. 1136, 1138. (2) (a) Where a policy or contract is ambiguous as to its meaning and resort is had to extraneous evidence to explain its meaning, the intention of the parties to the contract is a question of fact for the jury and not one of law for the court. Yost v. Silvers, 138 Mo. App. 524; Phillips v. Barnes, 105 Mo. App. 421; Colgate v. Latta, 115 N. C. 127; Brown v. Graw, 14 Pet. 601; Paulett v. Town of Nottingham, 8 N. H. 305; Wolverine Lumber Co. v. Insurance Co., 145 Mich. 651. (b) The appellant having introduced evidence *aliunde* the contract to explain its meaning, is estopped from asserting that the court erred in submitting its meaning to the jury. Ellis v. Harrison, 104 Mo. 270, 279; Hof v. Transit Co., 213 Mo. 445, 469; Graf Distilling Co. v. Wilson, 172 Mo. App. 612, 619; Hamilton v. Barker, 116 Mich. 684. (3) The appellant is bound by the theory upon which it tried this cause in the court below. Dougherty v. Gangloff, 239 Mo. 649, 660; Brays Admr. v. Seligmans Admr., 75 Mo. 40. (4) The appellant is bound by the contract as written and the fact that it was not authorized by its charter or by the license granted by the State of Missouri, is immaterial. Kribs v. United Order of Foresters, 191 Mo. App. 324; Knott v. Ins. Co., 161 Mo. App. 579; McPike v. Insurance Co., 187 Mo. App. 679; Wilson

v. Insurance Co., 125 Mo. App. 597, 598. (5) The appellant is estopped from asserting the defense of *ultra vires* to an executed contract. Knott v. Insurance Co., 161 Mo. App. 579; Cass County v. Insurance Co., 188 Mo. 1, 14; Eastern Association v. Williamson, 189 U. S. 122, 129. (6) A policy issued by a foreign company not licensed to do business in this State, to a citizen thereof, or by a foreign company licensed to do business in Missouri, but of a character or class not authorized by its license, is valid and enforceable by the insured. Lumbermen's Mutual Ins. Co. v. Railroad, 149 Mo. 165, 178; Knott v. Insurance Co., 161 Mo. App. 579; Kribs v. United Order of Foresters, 191 Mo. App. 524; Strompe v. Insurance Co., 109 Minn. 364; Corbett v. Insurance Co., 135 Wis. 505; Insurance Co. v. Stave Co., 61 Ark. 1; Insurance Co. v. Railroad Co., 134 Ind. 215; Pennypacker v. Insurance Co., 80 Ia. 56.

STATEMENT.—This is an action on an insurance policy. It is averred in the petition that on July 2, 1909, the defendant, for the consideration of $35 then paid to it, issued and delivered to William E. Dunn its policy or contract, whereby it promised and agreed to insure Dunn for a term of twelve months from July 14, 1909, "against death caused by accidental means or by sickness," in the sum of $5,000, the policy being made payable in case of death to plaintiff. It is averred that Dunn died on February 24, 1910, his death "caused by disease, to-wit, by *angina pectoris.*" Averring that defendant had been nofied of the death of Dunn immediately after that occurred and that plaintiff made due proof of the death and demanded payment of the sum of $5000, but that defendant, denying liability under the policy, had refused payment, judgment is demanded for that and interest thereon at six per cent. per annum from April 9, 1910, and for costs.

The answer upon which the case was tried admits the incorporation of defendant, averring that it was incorporated and organized under and by virtue of the laws of the State of Michigan, and that it was doing busi-

ness in the State of Missouri; admits that the policy sued on herein was issued. and delivered to Dunn, but denies all the other averments in the petition.

For further answer, it is averred that the policy sued on is known and described as a ''standard accident and limited sickness'' policy, and that in and by its terms the defendant expressly agreed that if Dunn should suffer any disability as the result of certain diseases mentioned in the policy, including *angina pectoris*, and any of said diseases should wholly and entirely disable and prevent him from performing any and all of the business of his occupation, the defendant company would pay to him the sum of $25 per week during this disability, and that it was expressly provided that if Dunn died as the result of any of said diseases the limit of defendant's liability under the policy should be only the amount of weekly indemnity specified which had accrued at the time of his death. It is expressly averred that the defendant did not agree to pay any sum of money upon the death of Dunn resulting from disease.

The answer further avers that defendant, incorporated under the laws of the State of Michigan, at the time the policy in question was issued, was not authorized or empowered to enter into any contract of life insurance, or any insurance contract, other than accident insurance and for the payment of weekly benefits in certain cases, and that under the certificate of authority issued to it by the insurance department of this State, it was not authorized to enter into any contract of insurance providing for the payment of any sum in the event of death from *angina pectoris*, or any other disease, but on the contrary was only authorized to do the business of accident, health and employers' liability insurance within this State at the time the policy was issued. Issue was joined on these affirmative defenses by reply.

The cause was tried on an agreed statement of facts admitting the incorporation of the defendant under the laws of the State of Michigan, and that it was doing business in this State in the year 1909, and at the times mentioned in the petition, under authority of a certifi-

cate issued by the insurance department of this State. It is further admitted that plaintiff is the widow and beneficiary of the insured and that in July, 1909, defendant issued its policy to plaintiff's husband, plaintiff being the beneficiary, the premium on which was $35; that that was duly paid and that the policy was in force for twelve months from the 14th of July, 1909, the insured dying February 24, 1910. By the stipulation it is further provided that defendant's charter, as amended January 20, 1909, might be offered in evidence, as also the certificate of the authority of the company to do business in this State for the twelve months beginning February 1, 1909; that at the date the policy was issued, the insured was fifty years of age, and that the customary premium for a policy of life insurance for the sum of $5000, insuring against death however caused for a man of his age was $80. It was stipulated that these three last matters might be offered in evidence subject to any objection plaintiff might make, and at the trial, following the reading of the agreed statement of facts, counsel for defendant offered and read in evidence the charter and its amendments and the certificate of authority to do business in this State, plaintiff objecting. It appeared that by amendment to the charter of defendant, made in 1908, its name was changed to that of "Standard Accident Insurance Company, of Detroit, Michigan."

The policy was indorsed on the back in part and as far as material as follows:

Standard Accident and Limited Sickness Contract.
The Standard Life and Accident Insurance Company
of Detroit, Michigan.
Incorporated 1884.
Policy No. S. A. & L. S. 247,014.
Name, Wm. E. Dunn.
Date, July 14th, 1909.
Term, 12 months.

| | |
|---|---|
| Amount Insured | $5,000.00 |
| Weekly Indemnity | 25.00 |
| Premium | 35.00 |

197 M. A.—30

The first page of the policy sets out that the defendant—in consideration of the truthfulness of the warranties herein and of the premium of thirty-five 00/100 dollars hereby insures William E. Dunn, for the term of twelve calendar months from noon, standard time, of the 14th day of July, 1909, against bodily injuries effected, directly and independently of all other causes, through external, accidental and violent means (suicide, whether sane or insane, not included); and against disability from sickness with the following modifications:

### Death, Loss of Limb or Sight.

1. Principal Sum: Five thousand 00/100 ($5,000.00). Weekly Indemnity: Twenty-five 00/100 dollars ($25.00).

| | |
|---|---|
| For loss of life.................... | Principal Sum |
| For loss of both hands by actual severance at or above wrist.......... | Principal Sum |
| For loss of both feet by actual severance at or above ankle............ | Principal Sum |
| For loss of one hand and one foot by actual severance at or above wrist or ankle ..................... | Principal Sum |
| For the irrecoverable and entire loss of sight of both eyes........... | Principal Sum |
| For the loss of either hand by actual severance at or above wrist........ | 1/2 Principal Sum |
| For the loss of either foot by actual severance at or above ankle........... | 1/2 Principal Sum |
| For the irrecoverable and entire loss of sight of one eye.................. | ½ Principal Sum |

2. Additional Amount, if any of above losses result within 200 weeks: If any of the disabilities enumerated above shall result from such injuries alone, within ninety days from the date of accident, the company will pay the sum specified opposite such disability, or, if such injury shall, from the date of the accident and independently of any and all other causes, directly, immediately, wholly and continuously disable and prevent the insured from attending to any and every duty pertaining to any business or occupation, and such injury shall within Two Hundred Weeks from the date of the accident

(during which time such disability shall have been total and continuous), result in any one of the losses enumerated in the above schedule, the company will pay the sum specified opposite such loss and in addition thereto the weekly indemnity mentioned above which has accrued at the time he suffers such loss, but not to exceed Two Hundred Weeks.

### Weekly Indemnity

3. Total Loss of Time, or if such injury shall not result in any of the disabilities enumerated in part "1," but shall, from the date of the. accident, directly and immediately, wholly and continuously disable and prevent the insured from attending to any and every kind of duty pertaining to his occupation, the company will pay him, while so disabled, for a period not to exceed two hundred consecutive weeks, the weekly indemnity mentioned above.

Partial Loss of Time, or, for a period, not exceeding twenty-six consecutive weeks, during which the insured shall, by reason of such injury, and from date of accident he directly and immediately, totally and continuously disabled from attending to one or more important daily duties pertaining to his regular occupation, or for like disability not exceeding . twenty-six weeks immediately following total disability,and not extending beyond the limit thereof, the company will pay him one-half of the weekly indemnity mentioned above.

Following this are provisions for double benefits of amounts specified in the foregoing sections or clauses marked on the margin 1, 2 and 3, if the insured is injured under circumstances named. Then follows the provision that if the insured should contract a disease which shall not terminate in death but, within one year from the date of the insurance or any renewal thereof, shall result in the total irrecoverable loss of the sight of both eyes, or permanent paralysis, which shall cause the insured to irrecoverably lose the use of both hands or both feet, etc., the insured will, upon proof of the continuation of the described disability for fifty-two consecutive weeks, be

paid one-half the principal sum of the policy in lieu of all other indemnities. The sixth clause provides that if the insured shall suffer from *angina pectoris,* among other diseases and such disease or illness shall wholly and entirely disable or prevent the insured from performing any or all of the business of his occupation, the insurer will pay to him the weekly indemnity provided for the period of such disability during which the insured shall necessarily be confined to his house for a period of not less than seven days. Another clause, the tenth, provides that if sunstroke, or freezing, or hydrophobia, accidentally suffered by the insured, or the involuntary or unconscious inhalation of gas, or other poisonous vapor shall result directly, independently and exclusively of all other causes, in the death of the insured within ninety days from the date of exposure to infection, the company will pay the beneficiary the principal sum of the policy. These are all the terms of the policy that we think material to notice.

At the conclusion of the reading of the agreed statement of facts by counsel for plaintiff, and of the reading in evidence of the articles of association and their amendments, and of the certificate of authority to do business in this State by counsel for defendant, these latter under objection of counsel for plaintiff, this being all the evidence in the case, counsel for defendant asked an instruction that under the pleadings and evidence plaintiff cannot recover. This was refused, defendant excepting, and, upon its demurrer being overruled, rested.

The court at the instance of plaintiff gave one instruction, which we will hereafter notice, defendant duly excepting, and of its own motion gave an instruction as to the number of jurors necessary to concur in a verdict.

There was a verdict for plaintiff for $6150. Interposing a motion for new trial as well as one in arrest of judgment and excepting to the action of the trial court in overruling these motions, defendant has duly perfected its appeal.

REYNOLDS, P. J. (after stating the facts).—We do not think plaintiff made out a case entitling her to go to the jury.

A consideration of the policy here sued on satisfies us that the defendant company, the insurer, is liable only in case of the death of the insured, when that death is the result of bodily injuries sustained "directly and independently of all other causes through external, accidental and violent means," or from the causes set out in the tenth clause of the policy, which we have given in substance. Of these latter it is to be said that they also cover death from external, accidental means or causes. We do not think, construing the policy as a whole, that it promises to pay any sum when death results solely from disease. The policy provides that if the insured shall suffer from certain diseases named, among others *angina pectoris*, "and such disease or illness shall wholly and entirely disable and prevent the insured from performing any and all of the business of his occupation, the company will pay to him the weekly indemnity herein provided for the period of such disability during which he shall necessarily be confined to the house, for a period of not less than seven days." It also covers indemnity for certain specified injuries. The only provisions for payment of any amount in case of death are, first: when death is the result of external, accidental and violent means; and, second, in line with the idea of death by accident, "if sunstroke, freezing or hydrophobia accidentally suffered by the insured, or the involuntary and unconscious inhalation of gas or other poisonous vapor shall result directly, independently and exclusively of all other causes, in the death of the insured within ninety days from date of exposure or infection." In that event "the company will pay the beneficiary hereinafter named the principal sum of this policy," that is, $5000.

There is no proof in the case that the death here was the result of any of these causes, or of any external, accidental or violent means.

In point of fact, while the petition states that the insured died from. *angina pectoris,* the agreed statement of facts upon which the cause was submitted to the jury is silent as to the cause of death, nor was that shown by any extrinsic evidence, although plaintiff alleged in her petition that the insured died of *angina pectoris.*

It was for the plaintiff to prove that the insured came to his death as a result of "bodily injuries effected directly and independently of all other causes, through external, accidental and violent means," or from a cause specifically provided for by the tenth clause, and it is only when this occurs that the principal sum becomes payable.

Our court in Goodes v. Order of United Commercial Travelers, 174 Mo. App. 330, loc. cit. 346, 156 S. W. 995, and in Wright v. Order of United Commercial Travelers, 188 Mo. App. 457, 174 S. W. 833, held that the burden was upon the party claiming under the terms of an insurance policy to show that the death resulted from causes within the terms of the policy.

So the Supreme Court of the United States held in Travelers' Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308. That is the universally recognized rule where it is sought to enforce an obligation under accident insurance policies.

Very clearly plaintiff has not sustained this burden.

Is this policy or contract of insurance ambiguous?

The learned trial court, in the instruction which it gave to the jury at the instance of plaintiff, told the jury:

"That the plaintiff contends that under the proper construction and meaning of the policy sued on, the defendant became liable thereunder for the death of the insured, . . . however caused, whereas the defendant contends that under the proper construction of the policy the defendant became liable for the death of . . . the insured, only in the event that such death was caused through external, violent and accidental means."

With this premise, this instruction proceeds:

"The court further instructs you that the contract as drawn is ambiguous as to what .was meant in this respect, and therefore it becomes a question of fact for the jury to determine what was meant and understood by the parties to the contract or policy."

The court then submitted to the jury the determination of what was meant by the policy, and told the jury that if it found that the parties to the contract meant that the policy should cover death however caused, plaintiff is entitled to recover but if it found and believed that by the policy the parties intended that the policy should cover death caused only by external, violent and accidental means, the verdict should be for defendant.

This instruction was error.

In the first place, we do not think that there is any ambiguity in the policy in the respect referred to by the learned trial judge; on the contrary, we think it clearly and unmistakably provides for payment of the principal amount only on the contingency of death from "bodily injuries, effected directly and independently of all other causes, through external, accidental and violent means;" or when death results from "sunstroke, freezing or hydrophobia accidentally suffered by the insured, or the involuntary and unconscious inhalation of gas or other poisonous vapor." We therefore hold that under this policy defendant is not liable, as it does not appear that the death occurred through any such causes. It is true that defendant is liable for the payment of a weekly indemnity for loss of time consequent on sickness or disability from injuries for a period of not exceeding two hundred consecutive weeks, but no claim for this is before us.

We are not unmindful of the rule that if there is an ambiguity, the insured is entitled to a construction of the policy which is most favorable to her. But where the language used, looking at the whole policy and construing it in accordance with its evident purpose, is unambiguous, there is no room for the application of this rule. [Smith et al. v. Phœnix & Continental Insurance

Companies, 181 Mo. App. 455, loc. cit. 458, 168 S. W. 831.]

This instruction is further erroneous in that it tells the jury that if the parties to the policy "understood, meant and intended that the policy should cover death, however caused, then the plaintiff is entitled to recover." There is not a word of extrinsic evidence to show what the parties intended; much less is there any evidence that defendant so intended, and we hold that the policy itself does not show any such intent.

Construing the policy with the articles of association and the certificate of authority from the superintendent of insurance, authorizing defendant to do business in this state, it is impossible to hold that the defendant company · was authorized to do a general life insurance business, or that it attempted to do that. By those articles and by the license or certificate the defendant is authorized to do only accident insurance and provide for weekly indemnity for sickness or for temporary disability not resulting in death, and it is clear that by its policy here involved it did not undertake to do more than this.

It is argued by the learned counsel for respondent that the case was tried on the part of appellant on the theory that there were ambiguities in the contract. In support of this it is urged that appellant had itself introduced its charter and amendments and the certificate of authority to do business in this State, and the fact that a person of the age of the insured, if taking out an ordinary life policy, would have been required to pay a much larger premium. We do not understand that these matters were introduced in any sense as explaining ambiguities. They were introduced for the purpose of showing the power and authority of the corporation under its charter and under the certificate of authority to do business in this State and in further proof of the claim that this was not a life insurance policy. The evidence was admissible for these purposes.

The instruction which the learned trial court gave was error: the demurrer interposed by defendant to the evidence should have been sustained.

The judgment of the circuit court is reversed.- *Allen* and *Becker, JJ.*, concur.

