Phillip T. Purcell
vs.
The John Hancock Mutual Life Insurance Company et al.
Eq. No. 12394.

December 17, 1934.

CHURCHILL, J. Heard on bill, answer and proof.

This is in effect, though not in form, a bill of interpleader to determine the party rightfully entitled to the proceeds of policies of insurance issued by the John Hancock Mutual Life Insurance Company, and to determine the amount payable.

Mary McGinnity died on August 8, 1933. She carried two policies of life insurance in the respondent insurance company, the original beneficiary named in each policy being her sister, Catherine McGinnity. On August 5, 1933, the assured changed the beneficiary in each policy and named the complainant, Phillip T. Purcell, as beneficiary under each policy.

The insurer raises no question as to the validity of the change of beneficiary although the same was not endorsed on the policies.

Two questions arise in the case: (1) as to whether Phillip T. Purcell or the administrator of the estate of the deceased is entitled to the proceeds of the policies, and (2) whether or not a double indemnity is due under each of the policies.

I.

Mary McGinnity was a domestic by occupation. She was 62 years old at the time of her death. Phillip T. Purcell was not related to the assured but had lived in the family the greater part of the time since 1920. He was a veteran and in receipt of veteran's relief and had also been paid during a part of the time the sum of $100 a month for education, and during the time when he was in receipt of $100 a month he sent a portion of it ($25 a month) to the assured to contribute to the expenses of the household while the sister Catherine was sick. From 1926 to the date of Mary McGinnity's death, the complainant lived in the McGinnity household and turned over all of his income, which amounted to some $50 a month, to Mary McGinnity, who returned to him a sufficient amount for incidental expenses. Purcell had a policy in the same company of a like character, payable to Mary McGinnity.

I find on all the testimony that the complainant, Phillip T. Purcell, made material contributions and incurred expense in respect to the household of Mary McGinnity from 1920 to the date of her death, and that from 1926 to the date of her death he turned over to Mary McGinnity his entire income, amounting to approximately $50 a month, and received from her money for incidental expenses and clothing.

I further find that the object of the change of beneficiary made by the assured under each of the two policies was to reimburse Phillip T. Purcell in part for the contributions he had made to the expenses of the household and that it was agreed between the complainant and the assured, at the time that the change of

beneficiary was made, that he was to pay the undertaker.

The controversy as to the party to whom payment should be made arises under an identical clause in each policy which provided that on satisfactory proof of death the company "may pay the insurance herein upon the death of the assured, either to the beneficiary above named, if living, or to such other beneficiary as may be duly and finally designated and recognized by endorsement hereon, or to the executor or administrator of said assured, or to any relative by blood or connection by marriage, or to any person appearing to the company to be equitably entitled thereto by reason of having incurred expenses in any way on behalf of the insured for burial or for any other purpose."

The company waives the benefit of the clause providing for endorsement of the name of the beneficiary on the policy and takes a neutral attitude as to whom it should pay under the clause above set forth and leaves it to the Court to appoint the person who shall be entitled to the proceeds of the policies.

Taking all the facts into consideration, the Court is of the opinion and rules that Phillip T. Purcell is entitled to the proceeds, and that on two grounds:

(A) He is the beneficiary named by the assured from whom she had received partial support and considerable assistance;

(B) He is entitled to take under that provision in the policy which gives the insurer the right to pay the proceeds to anyone equitably entitled thereto by reason of having incurred. expense for or on behalf of the assured or for any other purpose.

Some argument has been made to the effect that Phillip T. Purcell is a person of intemperate habits and therefore not entitled to receive the proceeds of the policies. Whether he was an intemperate man or otherwise would not seem to affect his right to the proceeds of the insurance policies if he had, in fact, incurred expense in support of the assured and, in addition, was named by her as her beneficiary under the change of beneficiary.

## II.

Some time after the policies were issued, the insurer created thereunder death benefits payable if death resulted from an accident. This carried a double indemnity.

The clause provided as follows:

"Upon receipt of due proof that the insured, after attainment of the age of 50 and prior to the attainment of the age of 70, has sustained bodily injury solely through external, violent and accidental means, occurring after the date of this policy and resulting in the death of the assured, within 90 days of the date of such policy, duly endorsed, while this policy is in force and while there is no default in the payment of premiums, the company will pay" etc.

The company takes the position that it has not been shown that the death of the assured was caused by accidental means as defined in the double indemnity provision.

The assured had been suffering from chronic myocarditis and chronic nephritis since some time in 1932 and her condition had grown steadily worse since that time, and her death was only a matter of time.

Three days before her death, which took place on August 8, 1933, her attending physician, Dr. McCurdy, saw her. At that time she was weak but able to walk about the house. Between 2 and 3 o'clock in the morning of August 8, 1933, Purcell heard a noise and heard her cry out. He went

to her room and found her lying on the floor on her right side. A braided rug was wrapped around her feet. She said, "I slipped on the rug." She was not able to walk at that time. Dr. McCurdy was immediately summoned and she was taken to the Rhode Island Hospital. She died before the hospital was reached.

The medical examiner, Dr. Griffin, performed an autopsy and found that she had a fractured hip as a result of the fall. The death certificate executed by him set forth the cause of death as "organic disease of the heart and kidneys and fracture of hip, fell in home." In the statement of the attending physician, filed with the examiner, the cause of death was certified by Dr. Griffin thus: "organic disease of the heart and kidneys and contributory cause of death (secondary) fracture of hip from fall."

In a letter to counsel for the administrator Dr. Griffin stated that the immediate cause of death was organic disease of the heart, contributing cause fracture of the hip, and went on to say that "there is no doubt that the shock from the fall with the fracture of the hip hastened her death. She would have lived longer if she had not had the heart disease. Hip fractures in aged people are invariably fatal. The fall was not the cause of her death per se."

In his oral testimony Dr. Griffin modified the statement in his letter to the effect that he was in doubt as to how far the shock hastened the death of Mary McGinnity.

He further testified that he did not deem the cause of death as accidental, that "in a woman in the condition which Mary McGinnity was in, receiving a fracture of the hip, it probably would be that the fracture of the hip would cause her death at some time, very remotely—but in this case most unusually right after her * * * fall."

Dr. McCurdy, her attending physi-

cian, testified that the "cause of death was the broken hip and the contributing cause was this disease of the heart" and at another place said that "the probable cause of death was a combination of circumstances—I didn't expect she would die within a week or so from seeing her a few days previously. I believe in my own mind that the breaking of her leg, giving her quite a bit of a shock and pain and possibly an embolism from the leg may have caused her death so soon after it happened."

On all the testimony I find that Mary McGinnity slipped on a rug in her room in the early hours of August 8, 1933; that she fell to the floor as a result of the slipping on the rug and suffered a fractured hip as a result of the fall; that such injury was a substantial factor contributing to the death of Mary McGinnity on August 8, 1933; that at the time of her death she was suffering from heart disease and disease of the kidneys, which diseases she had suffered since 1932, and that such disease were fatal and would in time have been the cause of her death, and that they were substantial factors contributing to the death of the assured on August 8, 1933; and I further find that neither contributing cause acting independently was sufficient to have caused her death at the time at which it did occur.

I further find that there is not sufficient testimony to warrant a finding that her fall was the result of dizziness.

Under the findings of fact I rule that the insurer is not liable to pay double indemnity under its contract.

"The application of that principle of law to the case at bar is that, if the insured was suffering from a disease, which was accelerated and aggravated by the accident so as to be a cause cooperating with it to produce the

fatal end, then there can be no recovery."

Leland vs. Order of United Commercial Travellers, 124 N. E. 517 (Mass., 1919).

The great weight of authority is to the same effect.

Stanton vs. Travellers Ins. Co., 78 Atl. 317 (Conn.);

Western Commercial Travellers Ass'n. vs. Smith, 85 Fed. 401 at 404.

The complainant and the administrator argue that the policies in the cases cited differ so widely in their language from the provision in the instant case that the cases are not in point.

In Ryan vs. Continental Casualty Co., 47 Fed. (2nd) 472 (5th C. C. A.), the Court had before it a policy which while differing in form was not in substance different from the contract in the case at bar. It followed the rule of construction in the Leland and Stanton cases.

A decree may be entered in accordance with the rulings of the rescript.

For complainant: Maurice E. Yarans.

For respondent: G. Hurley & Walter Moriarty.

For administrator: Aram A. Arabian.